# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOBAL RUIZ, | : | |
|       Petitioner, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 18-880** |
| | : | |
| THOMAS McGINLEY et al.,[1] | : | |
|       Respondents. | : | |

**McHUGH, J.**                                                                                                           **February 21, 2023**

## MEMORANDUM

Petitioner Christobal Ruiz brings this habeas action to seek relief from state court convictions for two separate burglaries for which he received life sentences. A Report from a magistrate judge has recommended that I dismiss Mr. Ruiz's petition as untimely, on the ground that Ruiz filed his petition after the statutory deadline and did not demonstrate any reason that he was entitled to equitable tolling. After review of the record, I appointed counsel and heard oral argument. Based on the evidence and testimony presented, I am persuaded that this case is similar to *Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011), and I will sustain Ruiz's objection to the recommendation and allow consideration of the merits.

---

[1] The current superintendent of S.C.I. Coal Township, where Ruiz is now incarcerated, is Thomas McGinley. The proper respondent in a habeas petition is the current superintendent of a petitioner's current facility, and the caption should be changed accordingly. *See* Rule 2(a), Rules Governing Section 2254 Cases (2019).

I.      **Procedural History**[2]

The facts underlying Mr. Ruiz's conviction and pursuit of post-conviction relief were summarized in the Report and Recommendation ("R&R") as follows:

> In May 2003, Ruiz received two life sentences for charges relating to two separate burglaries. After the Superior Court dismissed his appeal in June 2004 for procedural reasons, the trial court reinstated Ruiz's direct appeal rights in October 2008. In November 2009, the Superior Court affirmed his judgment of sentence. The Pennsylvania Supreme Court denied review on April 5, 2011.[3]
>
> On February 8, 2012, Ruiz timely filed for collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. § 9541 et seq. ("PCRA"). The PCRA court dismissed his petition in March 2014. In June 2015, the Superior Court vacated the PCRA court's order and remanded for appointment of new counsel. In November 2015, the PCRA court denied Ruiz's motion for a new jury trial. The Superior Court affirmed in August 2016, and the Pennsylvania Supreme Court denied review on May 3, 2017.

R&R, ECF 7 at 1-2.

Ruiz filed his habeas petition in federal court on November 27, 2017. On April 26, 2018, Respondents filed an Answer asserting that Ruiz's petition should be dismissed as untimely. Ruiz argued that his petition was timely under the statutory tolling provisions of 28 U.S.C. § 2244(d)(2), incorrectly claiming that his filing deadline was tolled during the ninety-day period during which he could petition the U.S. Supreme Court for a writ of certiorari regarding the Pennsylvania Supreme Court's denial of his PCRA petition. *See* Pet., ECF 1-1 at 14.

In his R&R, the assigned magistrate judge determined that Ruiz's statutory tolling argument was legally incorrect, and the time for Mr. Ruiz to file his habeas petition began tolling

---

[2] As I am ruling only on Mr. Ruiz's request to apply equitable tolling – and do not reach the merits of his petition – I present only an abbreviated history of Ruiz's conviction, PCRA proceedings, and Petition.

[3] Petitioner's judgment became final on July 4, 2011, ninety days after the Pennsylvania Supreme Court denied review of his direct appeal, when his time for filing a petition for writ of certiorari to the U.S. Supreme Court on direct appeal expired. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

as soon as the Pennsylvania Supreme Court denied review in the PCRA litigation. *See* ECF 7 at 3. He therefore concluded that based on the proper application of rules for statutory tolling, Ruiz's filing was two months late and thus untimely. *Id.* He further declined to find equitable tolling, concluding that Ruiz had not provided a basis to excuse his delay because he had not demonstrated extraordinary circumstances that impeded his ability to file a timely petition. ECF 7 at 3-4. Finally, the Report concluded that Ruiz was not entitled to the narrow fundamental miscarriage of justice exception to the statutory deadline. *Id.* at 4.

On May 15, 2018, Ruiz filed *pro se* Objections to the R&R arguing that his habeas petition should be deemed timely under the doctrine of equitable tolling. ECF 10. After determining that Ruiz's Objections raised issues regarding timeliness that may warrant a hearing, I appointed Jonathan Feinberg to represent Mr. Ruiz for litigation of his habeas petition. *See* ECF 12. Mr. Feinberg submitted a Memorandum in support of Ruiz's objection regarding equitable tolling. *See* Pet.'s Mem., ECF 13.[4]

After a delay due to the COVID-19 pandemic, I held an evidentiary hearing by videoconference regarding Ruiz's eligibility for equitable tolling on January 12, 2023. *See* ECF 18 and 22. At the hearing, Ruiz and Robert Stringer, who assisted Ruiz with his legal filings while both individuals were incarcerated at S.C.I. Greene, testified regarding the barriers that prevented Ruiz from filing a timely petition. *See* Hr'g Tr., ECF 22. Shortly thereafter, I heard argument from counsel. *See* ECF 21.

---

[4] The Memorandum focused solely on the timeliness of Ruiz's Petition and requested leave to file an amended petition on Ruiz's substantive claims if I find that Ruiz is entitled to equitable tolling and that his habeas case may proceed. *See* ECF 13 at 5 n.3.

## II.     Factual History Relevant to Equitable Tolling

Further factual background is necessary to provide context for Ruiz's arguments regarding his eligibility for equitable tolling.

On his arrival to S.C.I. Camp Hill in 2010, the Department of Corrections found that Ruiz was eligible for legal assistance due to a lack of language proficiency and/or a learning disability.[5] *See* Pet.'s Ex. B, ECF 13-1 at 36.  After the prison made this determination, Ruiz was provided with an Inmate Legal Reference Aide named Franklin Castle.  *See id.* at 37-38.  However, in 2012, DOC staff removed Castle as Ruiz's Legal Aide.  *See id.* at 37.  Ruiz, with Castle's help, filed a grievance regarding Castle's impending removal, noting that:

> Without this direct assistance, I will not be able to prepare and file the legal papers necessary to continue challenging my conviction and sentence, and I'm deeply worried . . . I am simply unable to read or write well enough to do the required work on my own.

*Id.*  Ruiz was never assigned another Legal Aide, though Ruiz attempted to continue working with Castle illicitly.  ECF 22 at 40.  At some point thereafter, however, Ruiz was transferred to S.C.I. Greene while Castle remained at S.C.I. Camp Hill.  *Id.*  Ruiz remained at S.C.I. Greene through the date that his habeas petition was filed.  *Id.* at 40-41.

In May 2017, Ruiz received the Pennsylvania Supreme Court's order denying his request to consider his PCRA petition.  *Id.* at 41.  Because Ruiz could not read English, he sought translation help from another Spanish-speaking individual at S.C.I. Greene.  *Id.* at 41-42.  After this individual explained that the state Supreme Court denied his request, Ruiz and this individual started working on Ruiz's federal habeas petition.  *Id.*  Their work was soon interrupted after the

---

[5] To be eligible to receive legal assistance, an individual in the Pennsylvania state prison system must be legitimately illiterate; lack the skills or comprehension to speak or understand English in its written form; or have a disability that substantially interferes with his/her ability to use or understand legal materials.  *See* DC-ADM 007, Pet.'s Ex. A, ECF 13-1 at 28.

4

prison transferred this individual to a different facility. *See* Stringer Decl., Pet.'s Ex. C, ECF 13-1 at 41-42.

Another individual incarcerated at S.C.I. Greene, Robert Stringer, agreed to step in to assist Mr. Ruiz's efforts to compile his habeas petition, though Stringer lacked any training as a Legal Aide. *Id.* at 42; ECF 22 at 9-12. Stringer's efforts were complicated by the language barrier between him and Ruiz, as Stringer spoke very little Spanish. ECF 13-1 at 42. Stringer strongly emphasized this issue in his declaration:

> Based on my numerous interactions with Mr. Ruiz, it was clear to me that he had little to no understanding of the legal process. His first language is Spanish and he speaks very little English, so he had difficulty understanding and communicating about legal concepts in English. Whenever I asked him about his case, he could not provide me with any details about the status of his appeals . . . Because of Mr. Ruiz's difficulty in understanding and communicating about legal concepts, it was difficult for me to determine what needed to be done in Mr. Ruiz's case, and, in particular, what his timeline was for filing a federal habeas corpus petition.

*Id.*

Work on Ruiz's petition stopped after Ruiz was placed in the Restricted Housing Unit ("RHU")[6] on June 27, 2017, for a disciplinary violation. *See* 7/2/2017 Grievance, Pet.'s Ex. D, ECF 13-1 at 46. During this time, Ruiz could not contact Stringer, had no access to his legal materials, and struggled to file grievances due to his minimal ability to communicate in English. ECF 13-1 at 42. Ruiz nonetheless made several attempts to move forward on his petition despite these obstacles. On July 2, Ruiz submitted a grievance about his lack of access to an array of materials and items needed to file his petition, including court documents, transcripts, testimony records, legal briefs, and a typewriter. *See* ECF 13-1 at 46. On July 15, Ruiz also submitted a request to RHU staff that he wanted to "put in for a habeas corpus," and asked for the address

---

[6] The RHU, commonly known as "the hole," is "a segregation unit with severely limited privileges." ECF 13 at 7; ECF 13-1 at 42.

where he should file his petition given that his conviction was in Berks County. *See* 7/15/2017 Request, Pet.'s Ex. F, ECF 13-1 at 55. Without access to Stringer or any other individual who could assist him, however, Ruiz was unable to work on his petition. *See* ECF 13-1 at 43; ECF 22 at 44-46. Ruiz remained in the RHU through mid-September of 2017. *See* RHU Medical Records, Pet.'s Ex. E, ECF 13-1 at 48-53.

Ruiz's challenges were compounded by Stringer's own placement in the RHU shortly before Ruiz's return from restricted housing. *See* ECF 13-1 at 42. Stringer remained in the RHU through October 2017. *Id*. Upon reuniting in October, Stringer and Ruiz resumed their efforts to compile Ruiz's habeas petition. *Id.* at 43. Ruiz and Stringer submitted Ruiz's petition a few weeks later on November 27. *See* ECF 1.

**III.    Standard of Review**

Where a party raises an objection to the report and recommendation of a federal magistrate judge, I conduct *de novo* review of the objected-to findings or recommendations, and may otherwise "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**IV.    Discussion**

**A.  Ruiz's petition is untimely despite AEDPA's statutory tolling provision.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a writ of habeas corpus by a person in state custody to be filed within one year of judgment. 28 U.S.C. § 2244(d)(1). This filing period is tolled, however, during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." *Id.* § 2244(d)(2).

Ruiz's limitation period began to run on July 4, 2011, the day his criminal judgment became final.[7] R&R, ECF 7 at 2. His limitations period was tolled when he filed a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541 *et seq.*, on February 8, 2012. *See* Resp'ts A275, ECF 6-4 at 75. By then, 219 days had passed since his judgment became final. The limitations period began to run again on May 3, 2017, when the Pennsylvania Supreme Court denied review of Ruiz's PCRA appeal. *See Jenkins v. Supt. of Laurel Highlands*, 705 F.3d 80, 85 n.5 (3d Cir. 2013) (citing *Lawrence v. Florida*, 549 U.S. 327, 332 (2007)) ("An application for state collateral review is not pending during the time a prisoner has to seek review of a decision by a state's highest court by filing a petition for certiorari to the United States Supreme Court."). The limitations period ended on September 26, 2017, as Ruiz had 146 days remaining to file his habeas petition when the period began to run on May 3. Ruiz filed his petition on November 27, 2017, sixty-two days after the deadline. *See* ECF 1. Mr. Ruiz's habeas petition is therefore untimely under AEDPA's statutory deadline, and I agree with this conclusion by the magistrate judge.

### B. Ruiz is entitled to equitable tolling.

The habeas limitations period can also be tolled in circumstances where "principles of equity would make [its] rigid application unfair." *Jenkins*, 705 F.3d at 89. To demonstrate that they are entitled to equitable tolling, the petitioner must show that they have been pursuing their rights "diligently," and that "extraordinary circumstances" stood in their way and prevented timely filing of the petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

---

[7] As noted above, Petitioner's judgment became final on July 4, 2011, ninety days after the Pennsylvania Supreme Court declined review of Petitioner's appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Applying *Holland*, the Third Circuit has held that equitable tolling applies in a variety of circumstances. *See Ross v. Varano*, 712 F.3d 784 (3d Cir. 2013) (abandonment by appellate attorney); *Munchinski v. Wilson*, 694 F.3d 308 (3d Cir. 2012); (PCRA court provided petitioner with misleading legal guidance); *Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011) (limited English proficiency and placement in segregated housing). Across these cases, the Circuit has repeatedly emphasized that equitable tolling requires a case-by-case analysis of the unique circumstances faced by a Petitioner. *See Ross*, 712 F.3d at 799; *Pabon*, 654 F.3d at 399. "There are no bright lines in determining whether equitable tolling is warranted," and "the particular circumstances of each petitioner must be taken into account." *Pabon*, 654 F.3d at 399.

Ruiz argues that the combination of the Department of Corrections' removal of his Legal Aide, his language barrier, his learning disability, and his diligence in compiling his Petition despite these barriers entitle him to equitable tolling on his petition. Respondents argue that Ruiz filed his Petition late not because of these circumstances, but due to a mistaken calculation of statutory tolling under AEDPA. Based on my review of the evidence and record before me, I am persuaded that Ruiz has demonstrated that equitable tolling should apply to his petition.

*1. Extraordinary circumstances impeded Ruiz's ability to file a timely petition.*

Of the cases addressing equitable tolling post-*Holland*, the Third Circuit's decision in *Pabon* is most relevant to Ruiz's circumstances. In *Pabon*, the petitioner was unable to read, write, or understand English. *Pabon*, 654 F.3d at 401. Pabon's language difficulty posed an even greater barrier due to his placement in his prison's restricted housing unit, where "there were no Spanish-language legal materials, and there was no notice of AEDPA in Spanish" and Pabon was denied any legal or translation assistance. *Id.* After reviewing similar holdings from the Second and Ninth Circuits, the court held that "inability to read or understand English, combined with denial

8

of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling," and remanded the matter for an evidentiary hearing.  *Id.* at 4000; *see also Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) (holding that English language deficiency may warrant equitable tolling); *Mendoza v. Carey*, 449 F.3d 1065, 1069 (9th Cir. 2006) (holding that a prison law library's lack of Spanish legal materials and a petitioner's inability to obtain translation assistance may constitute extraordinary circumstances).

Ruiz argues that he is entitled to equitable tolling due to his limited English, his learning disability, the loss of his prison-provided Legal Aide, and his placement in the RHU during the time he was compiling his habeas petition.  *See* ECF 13 at 5.  Both Ruiz and Stringer testified that Ruiz cannot read, write, or speak English, and Ruiz required an interpreter for the entire evidentiary hearing.  ECF 22 at 11, 31-33.  Ruiz also testified that he has a learning disability, for which he received special education services, *id.* at 31, which makes his language barrier even more significant than that faced by the petitioners in *Pabon*, *Mendoza*, and *Diaz*.  Although Respondents posit that this testimony may not be credible, Ruiz's difficulties were plainly apparent to me at the hearing.  Ruiz struggled with extremely basic directions throughout the proceeding, including instructions on how to use a speaker phone, and a lawyer's request that he turn to a specific page in a document placed in front of him.  This bears out the Department of Corrections' conclusion that Ruiz's difficulties reading and writing were severe enough to qualify him for a Legal Aide to assist with his post-conviction filings.  *See* ECF 13-1 at 36.

The Department of Corrections' removal of this Legal Aide in 2012 created an additional barrier to Ruiz's ability to file court documents.  There is no explanation from the Department of Corrections as to why assistance was taken away even through Ruiz had been deemed eligible.  Ruiz has therefore not had the assistance of a Legal Aide since 2012 and has instead relied on

9

assistance from other individuals incarcerated at his facilities to draft and file legal documents. When these individuals are transferred to other institutions – as occurred to the individual helping him in the spring of 2017 – Ruiz has searched for a different individual to assist him. *See id.* at 41-42. More importantly, because none of these individuals have been certified as legal aides by the Department of Corrections, the risk of legal errors in any filing was heightened. Respondents fault Ruiz for not seeking another Aide, but this ignores the underlying factual context. On the record as it stands Ruiz was deemed eligible, and then had his Aide removed without explanation. He immediately filed a grievance protesting the loss of the Aide, emphasizing his limitations.[8] The record does not contain any official response to this grievance, but the grievance was clearly denied as it is undisputed that Ruiz never had another Aide assigned. This is not a case where Ruiz failed to protest the loss of the Aide; he followed the grievance procedure available to him without success.

Ruiz argues that these difficulties were exacerbated by his placement in the RHU, along with Stringer's placement in the RHU a short time later. After Ruiz was placed in the RHU on June 27, 2017, he had no contact with Stringer and claims that he had no access to any legal materials whatsoever. *See id.* at 46. The only way he was able to submit requests to the RHU staff, he alleges, was through translation help from individuals in nearby cells. Although Ruiz was released from the RHU in mid-September, just before the deadline for filing his petition, he asserts that he was unable to pull together his petition in that short period of time without the assistance of Mr. Stringer, who had also been placed in the RHU and was not released until October. *See*

---

[8] It bears mention that the grievance form itself states that it was prepared with the assistance of the same Aide who had been taken away, who continued to help Ruiz informally. ECF 13-1, Ex. B. That individual, Franklin Castle, was then transferred to another institution. Counsel for Petitioner points out that Mr. Castle had previously won a suit against prison officials based upon a retaliatory transfer. *Castle v. Clymer*, 15 F. Supp. 2d 640 (E.D. Pa. 1998) (DuBois, J.).

ECF 22 at 46.  The Third Circuit recognized in *Pabon* that a petitioner with language difficulties faces "perhaps more extraordinary" circumstances where they are placed in the RHU at a critical period for compiling their habeas petition.  654 F.3d at 400.  Ruiz's struggles as a Spanish-speaking individual in the RHU demonstrate just how difficult such an effort can be.

Respondents dispute that any of these circumstances were the cause of Ruiz's delay in filing and posit instead that Ruiz – relying on Stringer – filed his petition late due to a mistaken belief that AEDPA's statutory tolling continued during the period when Ruiz could have sought a writ of certiorari in the U.S. Supreme Court.  In support of this argument, Respondents point to language in Ruiz's Petition that misunderstood how statutory tolling functions under AEDPA and asserted that his petition was timely.  *See* ECF 1-1 at 14.  Stringer also admitted at the January 27 hearing that he had mistakenly calculated the deadline and did not realize the mistake until a Legal Aide at the prison explained his error.  ECF 22 at 13-15.

Two issues weaken Respondents' argument on this point, however.  First, Ruiz's mistake about the deadline cannot fairly be separated from the Department of Corrections' failure to provide Ruiz with a replacement Legal Aide after it removed the first one without explanation.  Such individuals receive specialized legal training, and any Legal Aide would likely understand how statutory tolling works under AEDPA.  *See* ECF 22 at 9.  Indeed, it was a trained Legal Aide that corrected Stringer's mistaken understanding of statutory tolling sometime after Ruiz filed his petition.  *Id.* at 15.  Second, and even more critically, Ruiz would have struggled to file a timely petition even *with* correct knowledge of statutory tolling.  Ruiz relied heavily on Stringer to compile his petition and working on the filing was near-impossible while the pair were separated.  Ruiz was placed in the RHU approximately three months before the deadline and was unable to resume work on his petition until Stringer was released from the RHU several weeks *after* the

petition deadline passed. Indeed, Stringer testified at the hearing that Ruiz "absolutely" would have filed a timely petition but for his and Ruiz's respective placements in restricted housing. ECF 22 at 22.

Respondents also question the degree of Ruiz's limitations. Respondents point to Ruiz's Petition for Allowance of Appeal in his state PCRA proceedings,[9] contending that this filing on Ruiz' part demonstrates that he can quickly prepare complex legal filings despite proceeding pro se. The record is silent as to whether any other individual assisted Ruiz, and as his counsel points out, the filing simply reiterated the earlier submissions of counsel and was essentially a "cut and paste" filing, to use the vernacular. Respondents also attach significance to Ruiz' request for a typewriter, suggesting that a typewriter is an improbable request for someone incapable of preparing legal documents. But Ruiz clearly intended to file legal documents and gaining access to a typewriter to facilitate that process sheds no light who would be using it. Ultimately, these arguments simply do not offset the impressions I formed from observing Mr. Ruiz during his testimony, which were only buttressed by the testimony of Mr. Stringer, whom I also found credible.[10]

> 2. *Ruiz diligently worked to compile and file his habeas petition despite facing an array of impediments to timely filing.*

*Pabon* is also instructive on the issue of diligence as it pertains to equitable tolling. In *Pabon*, the petitioner sought assistance with his petition through a variety of avenues, including contacting his state PCRA attorney, requesting legal materials in Spanish while confined to the RHU, and seeking out a fellow incarcerated person who spoke enough Spanish to assist with his

---

[9] Ruiz prepared this pro se, as his appointed PCRA counsel declined to proceed on grounds of futility.

[10] In assessing Mr. Stringer, I was impressed by his candor in admitting the mistake he made when trying to give quasi-legal advice to Ruiz.

12

petition. *See* 654 F.3d at 402. After noting that due diligence does not require "the maximum feasible diligence" but instead only "reasonable diligence in the circumstances," the court held that the petitioner had demonstrated reasonable diligence – particularly given the difficulties arising from his language barrier. *Id.* at 402-03 (citing *Holland*, 560 U.S. at 653).

I find that Ruiz has demonstrated reasonable diligence given his circumstances. Upon his arrival in state prison, Ruiz quickly requested and received a Legal Aide. When that Aide was taken away, he filed a grievance. Later, after Ruiz was transferred to S.C.I. Greene and could no longer contact his Legal Aide, he sought out and received assistance from another incarcerated individual at S.C.I. Greene – up until that individual was himself transferred to a different facility. ECF 13-1 at 41-42. Once Ruiz sought out and began working with Robert Stringer, Ruiz and Stringer worked diligently to compile his petition until Ruiz was placed in the RHU. Even while in the RHU, Ruiz submitted a request to staff that he wanted to "put in for habeas corpus," asked for the address of the court where he could file his petition, and filed a request for missing documents and items that he needed to compile his petition. *See id.* at 46, 55. He also sought English language assistance from individuals celled near him in the RHU in compiling these requests to the RHU staff. Once Ruiz and Stringer were both released from segregated housing, the pair resumed work on Ruiz's habeas petition and filed the document just one month later. *Id.* at 43; ECF 22 at 46. Indeed, Stringer testified that Ruiz's petition would have "absolutely" been timely but for their respective stints in the RHU. ECF 22 at 22.

In some respects, the record here is weaker than *Pabon,* and one of Respondents' stronger arguments focuses on Ruiz' failure to pursue a replacement Aide more vigorously. In the final analysis, however, courts must be cognizant of the power dynamics in prison settings. Ruiz had his Aide removed without explanation, grieved the removal unsuccessfully, and his Aide was then

13

transferred to another institution. If "maximum feasible diligence" were the controlling standard, then Ruiz would likely fall short. But on these facts, I find that he exercised "reasonable diligence under the circumstances." *See Pabon*, 654 F.3d at 402-03.

## V. Conclusion

For the reasons set forth above, Petitioner's objection is sustained, and I find that he is entitled to equitable tolling on his habeas petition. An appropriate order follows.


    /s/ Gerald Austin McHugh
    United States District Judge