**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOBAL RUIZ,** | : | |
| **Petitioner** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 18-880** |
| | : | |
| **THOMAS McGINLEY et al.,** | : | |
| **Respondents** | : | |

| | |
|---|---|
| **McHUGH, J.** | **May 29, 2024** |

**MEMORANDUM**

I.     **Background** ................................................................................................................ **2**
   *A.  The Burglary Offenses* ....................................................................................... *2*
   *B.  Pre-Trial Notice of a Third-Strike Offense* ........................................................ *3*
   *C.  Conviction on All Charges* .................................................................................. *4*
   *D.  Imposition of Two Life Sentences* ...................................................................... *5*
   *E.  Direct Appeal* ..................................................................................................... *7*
   *F.  Post-Conviction Relief Act Litigation* ................................................................ *8*
     i.   Ruiz's Pro Se PCRA Petition ............................................................................8
     ii.  Appointed Counsel Hoffert's No Merit Letter ................................................10
     iii. PCRA Appellate Proceedings – First Appeal ..................................................11
     iv.  Appointment of New Counsel and Proceedings on Remand ...........................12
     v.   PCRA Appellate Proceedings – Second Appeal ..............................................12
II.    **Legal Standards** ...................................................................................................... **13**
   *A.  Exhaustion* ........................................................................................................ *13*
   *B.  Ineffective Assistance of Counsel* ...................................................................... *14*
   *C.  Merits Review of Federal Habeas Claims* ........................................................ *14*
III.   **Discussion** .................................................................................................................. **15**
   *A.  Exhaustion* ........................................................................................................ *15*
     i.   Ruiz exhausted claims one, three, and four .....................................................15
     ii.  Ruiz failed to exhaust claim two, but his subsidiary claim of ineffective assistance is
       excused from procedural default. ....................................................................18
   *B.  Merits Review of Federal Habeas Claims* ........................................................ *20*
     i.   The PCRA court unreasonably determined that Ruiz was not prejudiced by his
       counsel's failure to present any mitigating evidence for sentencing. ...........21
     ii.  The PCRA court did not unreasonably apply federal law as to Ruiz's second claim.....32
     iii. The PCRA court did not unreasonably apply federal law as to Ruiz's third claim. .......33
     iv.  The PCRA court did not unreasonably apply federal law as to Ruiz's fourth claim. .....34
IV.    **Conclusion** ................................................................................................................ **35**

Petitioner Christobal Ruiz is serving two life sentences, without the possibility of parole, based exclusively on convictions for burglary.  Although he has a prior criminal history, there is no evidence he has ever inflicted injury on another person.  At sentencing, having been given notice that the Commonwealth intended to invoke Pennsylvania's "three strikes" statute, defense counsel offered neither evidence nor argument in mitigation.  Indeed, counsel made no argument whatsoever on the petitioner's behalf at sentencing, and even a superficial inquiry of her client would have revealed substantial grounds for mitigation.  I am persuaded that counsel was ineffective in a way that caused prejudice to Ruiz, and that the state courts failed reasonably and faithfully to apply federal law.  I will therefore grant relief and order that petitioner be resentenced.

## I.      Background

### A.  *The Burglary Offenses*

Mr. Ruiz was charged with committing two burglaries on September 8, 2002.  A23, A54.[1] The first offense occurred at a home in Wyomissing, Pennsylvania.[2]  James Williams, a resident of the home, heard knocking at the front door of the property around midday.  Williams ignored the knocking and, through a window, observed a Hispanic male walking away from the front door. Shortly thereafter, Williams heard a noise from above which he later determined was someone entering the home through a window and knocking items off a dresser.  Williams exited the home through the garage and saw the same Hispanic male walking out the front door of the home. Williams confronted the male, who then walked away and left the scene.  The male's entry into

---

[1] Citations throughout this memorandum preceded by "A" refer to documents attached as exhibits to ECF 6, the Commonwealth's response to the initial pro se petition.  Citations to "Supp. App." refer to documents attached as exhibits to ECF 26, Ruiz's Amended Petition.

[2] Facts underlying the first offense can be found in the Wyomissing Police Department's affidavit of probable cause, A54-58, and the trial transcript, Supp. App. 2-8 (testimony of James Williams).

the property caused damage to a set of blinds and a ceramic figure.  The total value of the damage was estimated at $40.

The second offense occurred about an hour later at a home in Reading, Pennsylvania.[3] A26.  Julissa Lopez was on the second floor of the home when she heard knocking at the front door.  She began to walk down the steps and saw a man climbing into the house through the front window.  She ran back upstairs and telephoned her father, Saul Lopez, who was working nearby. Mr. Lopez then arrived at the home and located the man on the second floor, holding a screwdriver and carrying a brown leather bag.  Mr. Lopez began to struggle with the man to get him out of the home.  As the struggle continued out onto the street, a Reading police investigator observed the struggle and approached to take the intruder into custody.  The intruder was identified as Christobal Ruiz.  Police searched the bag in his possession and located two wallets, a small amount of money, a credit card, and a plastic magnifying glass, which the Lopezes identified as theirs.  The stolen property was valued at less than $55.  Mr. Ruiz was taken into custody by the Reading police and charged with burglary and related offenses.  After a photo lineup identification, Mr. Ruiz was also charged with burglary and related offenses in connection with the Wyomissing incident.

B. *Pre-Trial Notice of a Third-Strike Offense*

On January 9, 2003, the assistant district attorney prosecuting Mr. Ruiz's case filed a formal notice of intent to seek a mandatory minimum sentence under Pennsylvania's so-called "three strikes" provision, 42 Pa. C.S. § 9714.  A138.  The notice incorporated the language of the statute, stating that the Government would seek "a minimum sentence of ten (10) years of incarceration for a second conviction of a 'crime of violence' as defined by 42 Pa. C.S.A. § 9714(g) or a sentence of twenty-five (25) years of incarceration for a third or subsequent conviction of a

---

[3] Facts underlying the second offense can be found in the affidavit of probable cause prepared by a Reading police officer, A26, and the trial transcript, Supp. App. 17-25 (testimony of Julissa and Saul Lopez).

'crime of violence.'[4]  The notice stated further that Mr. Ruiz faced charges for offenses fitting the definition of a crime of violence and that he had three prior convictions for crimes of violence in Lancaster County.  The prosecution attached to the notice three affidavits of probable cause corresponding to the referenced Lancaster County convictions: (1) an offense on May 23, 1976; (2) an offense on July 8, 1989; and (3) an offense on July 10, 1989.  A140-44.

Although the notice did not reference the prosecution's specific intent to seek a life sentence, the statutory provision cited in the notice made clear that the prosecution would seek a mandatory minimum of ten or twenty-five years and the sentencing judge in Mr. Ruiz's case would have discretion to impose a life sentence:

> Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa. C.S. § 9714(a)(2).

C.  *Conviction on All Charges*

Charges from both offenses – the Wyomissing burglary and the Reading burglary – were consolidated for a jury trial before Berks County Court of Common Pleas Judge Stephen B. Lieberman.  Mr. Ruiz was represented at trial by Kathleen D. Dautrich, Esq.  Trial commenced on May 6, 2003.  The following day, the jury returned guilty verdicts on all counts: burglary, criminal mischief, and criminal trespass as to the Wyomissing offense; and burglary, criminal trespass, simple assault, possession of an instrument of crime, and theft by unlawful taking or disposition as to the Reading offense.

---

[4] Most jurisdictions categorize burglary as a crime of violence because of the potential risk to occupants, but research sponsored by the Department of Justice reflects that no more than 2.7 percent of burglaries involve violent acts.  Richard F. Culp, Ph.D. et al., *Is Burglary a Crime of Violence? An Analysis of National Data 1998-2007*, 70-71 (Feb. 2015), available at, https://www.ojp.gov/pdffiles1/nij/grants/248651.pdf (last accessed 5/15/2024).

D. *Imposition of Two Life Sentences*

The trial court convened a sentencing hearing on June 19, 2003.  At the start of the hearing, the prosecution presented evidence to support its contention that Mr. Ruiz had been convicted of three prior crimes of violence.  It did so through the testimony of a clerk of the Lancaster County Court of Common Pleas authenticating certified copies of records from court files regarding each of the three convictions identified in the January 9, 2003, notice.  A62-64.  The prosecution then introduced the testimony of a state parole officer who had been responsible for supervising Mr. Ruiz's parole, arising out of the sentences for his two July 1989 burglary offenses.  A64-65.  Dautrich did not challenge the prosecution's evidence, and the court found that the prosecution had met its burden of proving that the three-strikes law applied to Mr. Ruiz's sentencing.  A66 at 18:1-11.

Following that finding, the trial court asked the prosecution for its recommended sentence, to which the prosecutor responded: "The Commonwealth is recommending life in this case."[5]  A66 at 18:9-14.  To support that recommendation, the prosecutor pointed out that Mr. Ruiz "was on parole for robbery and burglary at the time he committed . . . these two offenses, both of these offenses being home invasions."  A66 at 18:16-20.

The trial court then asked defense counsel for her position on sentencing:

THE COURT:  All right. [Counsel] Dautrich?

[COUNSEL] DAUTRICH:  Your Honor, if it please the Court, clarification, is the Commonwealth actually seeking mandatory sentence as set forth in 9714 under Section (a) (2)?

[COMMONWEALTH]:  Yes, Your Honor.

---

[5] At this stage, the Commonwealth agreed to withdraw the count of simple assault for sentencing, and Judge Lieberman's imposition of life sentences addressed only the burglary convictions.  *See* A65 at 14:25-15:6 (referring to the withdrawal of Count 3 with respect to the Reading offense); A27 (listing, as part of the affidavit of probable cause, Count 3 as simple assault).

THE COURT:  Do you have a copy of that?

[COUNSEL] DAUTRICH:  Because I remember this as being -- I have to look at the notice.  I didn't recall if there was a subsection.  It just says Section 9714.

[COMMONWEALTH]:  That's the third strike section in its entirety, Your Honor.

THE COURT:  All right.

[COUNSEL] DAUTRICH:  I guess my question is, is the Court having – is the Court required to have a hearing under Subsection (b) for a high risk dangerous offender?

THE COURT:  That's what we're doing.

[COMMONWEALTH 2]: It's been deleted.

[COMMONWEALTH]: Your Honor, I believe defense is referring to a part of the Title that was deleted by Act in 2000.

A66 at 18:21-19:16.

Counsel's response revealed that she was unaware of the procedures under § 9714, and seemingly unaware of the peril faced by her client.  In fact, the prosecutor had to educate her on the record that the Pennsylvania legislature had removed the provision allowing for a hearing separate from the sentencing three years earlier.  A66 at 19:15-16.  When asked to proceed, counsel stated, "We have no evidence to present at this time."  Moreover, she offered no argument.  A66 at 19:17-19.  The trial judge then asked Mr. Ruiz whether he wished to say anything, and he responded: "No."  A66 at 19:22.  According to Mr. Ruiz, he received no guidance from Dautrich regarding sentencing.  A397-400.

The trial court began its pronouncement of sentence by commenting that people were present in both homes that Mr. Ruiz was charged with burglarizing.  A66 at 20.  The court noted it had reviewed a pre-sentence investigation report, making reference to six prior convictions for burglary (three more than those addressed in the prosecution's evidentiary presentation).  The court

stated, further, that Mr. Ruiz was on parole for two burglary convictions at the time he committed

the most recent offenses.  The court then told Mr. Ruiz:

> And so you're obviously not amenable to treatment in any way.  You're obviously
> an extreme danger to law-abiding citizens.
>
> I thank the God that I have that we have here in Berks County a diligent District
> Attorney and Assistant District Attorneys such as [the trial prosecutor] who
> carefully looks at records, sees when appropriate sentencing enhancements apply,
> and is not afraid to ask for them and is not afraid to try a case to secure a conviction
> so that somebody can be taken off of the streets permanently.
>
> You are an extreme danger to all law-abiding citizens.  You made a big mistake
> coming to Berks County and committing a crime here, and that will be reflected in
> the sentence.

A66 at 20; A67 at 21.  The court then imposed two concurrent life sentences, one for each of the

burglary offenses, set to commence at the expiration of a Lancaster County sentence Mr. Ruiz was

then serving.  A67 at 21-22.

　　E. *Direct Appeal*

　　Ms. Dautrich filed a post-verdict motion for acquittal or for a new trial, and upon its denial,

she withdrew her appearance.  A97-101.  Thereafter, the court appointed Jeanne M. Trivellini,

Esq. as Mr. Ruiz's new counsel.  A102.  Due to questionable representation from Trivellini, an

issue not before this Court, it took Mr. Ruiz five years to have his direct appeal heard on the merits.

　　Once his direct appeal process moved forward, the trial court replaced Trivellini with new

counsel, Allen Daringer, Esq.  Daringer filed a concise statement delineating seven claims of trial

court error, as well as seven claims of ineffective pretrial and trial counsel.  A221-24.  In the final

reference to prior counsel's ineffectiveness, the statement asserted that Dautrich "failed to

investigate, prepare, and present evidence at Defendant's sentencing hearing."  A223.

　　On February 17, 2009, the trial court issued an opinion addressing the issues identified in

Daringer's concise statement.  A207.  With respect to the claim that Dautrich failed to present

mitigation evidence, the court stated: "Even assuming this allegation is of arguable merit, there is no possibility that the outcome of the proceedings would have been different given the Defendant's extensive history of committing crimes of violence. . . ." A218.

Mr. Daringer then filed a brief in the Superior Court arguing the same issues outlined in the concise statement, A188-90, and added a contention that Mr. Ruiz's sentence was unlawful because it was cruel and unusual in violation of the Eighth Amendment. A204. Daringer's brief did not substantively address any of the ineffectiveness claims, instead noting that such claims are generally deferred to post-conviction review where the defendant would have an opportunity to develop a full and complete record. A189 n.2. In an opinion issued on November 17, 2009, the Superior Court rejected all claims of trial court error, A253-68, and ruled that any claims of ineffective assistance would not be considered on direct appeal. A268-69.

Mr. Ruiz did not receive notice from Daringer of the Superior Court's opinion, and so he filed a second petition arguing that Daringer had provided ineffective assistance by failing to seek review in the Supreme Court of Pennsylvania. On October 29, 2010, the trial court granted that petition and directed Daringer to seek such review. A270. Daringer filed a petition for allowance of appeal, and, on April 5, 2011, the Supreme Court of Pennsylvania denied the petition. A273. This concluded Mr. Ruiz's direct appeal – nearly eight years after it began.

F.  *Post-Conviction Relief Act Litigation*

i.  ***Ruiz's Pro Se PCRA Petition***

On February 8, 2012, Mr. Ruiz filed a timely pro se petition under the Post-Conviction Relief Act (PCRA). A275. Mr. Ruiz asserted the following claims relevant to the habeas petition before me:

> Sentencing counsel rendered ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution . . . for failing to investigate

and/or present available mitigating evidence that would have had a direct bearing on and would have served to diminish [Mr. Ruiz's] level of culpability for sentencing purposes.

. . .

Sentencing and appellate counsel rendered ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution . . . for failing to object to, preserve, or assert on direct appeal that [Mr. Ruiz's] sentence of life without parole, which is in essence a sentence to a slow, emotionally agonizing death that is arguably harsher than traditional forms of capital punishment, is offensive to the evolving standards of decency and violates the Eighth and Fourteenth Amendments to the U.S. Constitution when, as in [Mr. Ruiz's] case, the penalty is imposed upon one guilty only of non-homicide related offenses.

. . .

Sentencing counsel rendered ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution . . . by failing to properly investigate, notify the Court, and/or object to the use of [Mr. Ruiz's] 1976 Lancaster County criminal conviction (Lancaster Criminal No. 1264 of 1976) as a third strike for enhancement purposes since [Mr. Ruiz] was convicted and sentenced on that case without the presence, advice, or assistance of counsel.

. . .

Sentencing counsel rendered ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution . . . by failing to object or otherwise preserve for appeal the sentencing court's reliance on an impermissible factor.

A278-81 (listed as issues #9, #7, #1, and #6, respectively).

Mr. Ruiz attached to his PCRA petition a verified statement outlining in detail the factual basis for his claims.  The statement also included Mr. Ruiz's account of the circumstances leading to his entry of a guilty plea to the Lancaster County burglary charges in 1976, A395-97, and an extensive history of his lifelong addiction to cocaine and heroin.  A397-400.  In addition, in his statement, Mr. Ruiz asserted that Dautrich never discussed with him the importance of mitigating evidence and never interviewed him regarding his background.  A399- 400.  The judge who sentenced Ruiz also presided in the PCRA proceedings.

ii.    ***Appointed Counsel Hoffert's No Merit Letter***

On February 14, 2012, the trial court appointed Lara Glenn Hoffert, Esq., as counsel to litigate Mr. Ruiz's PCRA petition and directed Hoffert to file an amended, well-pled petition detailing Mr. Ruiz's eligibility for relief.   A450.   Following her appointment, Hoffert communicated with Mr. Ruiz regarding the basis for his claims.   A502-03.   Mr. Ruiz communicated to her that there was mitigation evidence available that Dautrich could have uncovered, among other things.   A505-06.   For whatever reason, Ms. Hoffert disregarded this communication, and on July 30, 2013, filed in the trial court a letter of "no-merit" (otherwise referred to as a "*Finley* letter"), A452-65, asserting that Mr. Ruiz could not "show how he was prejudiced by the alleged omissions or acts of counsel, or that his claims have any arguable merit." A461.  Mr. Ruiz responded with a 30-page brief objecting to Hoffert's letter.  A466-509.

On February 24, 2014, the trial court issued a notice of its intent to dismiss Mr. Ruiz's petition without a hearing.  A510-24 ("notice of intent to dismiss").  In that filing, the trial court also granted Hoffert's request to withdraw as appointed counsel.   A524. On the merits of the sentencing mitigation issue, the trial court stated that Mr. Ruiz did "not in any way establish . . . that counsel was aware of these facts or that witnesses were willing to cooperate and appear on his behalf at sentencing."  A518.  The court further attached significance to the fact that Mr. Ruiz had declined to say anything in his own defense at his sentencing.  *Id.*  The judge reiterated what he had said at sentencing, that based on his prior record and the fact that he was on parole when he committed the burglary offenses at issue in this case, "it was clear that [Mr. Ruiz] was not amenable to treatment," and, accordingly, Mr. Ruiz was "unable to establish prejudice."  *Id.*

Mr. Ruiz filed timely objections to the trial court's notice of intent to dismiss.  A525-30. On March 31, 2014, the trial court entered an order formally dismissing Mr. Ruiz's PCRA petition. A531.

### iii.    *PCRA Appellate Proceedings – First Appeal*

Mr. Ruiz appealed from the trial court's dismissal order by filing a pro se brief before the Superior Court.  A532.  The arguments in that brief included, as relevant to his habeas petition, the following:

- Sentencing counsel was ineffective for failing to investigate and/or present mitigation evidence at sentencing.  A552-57.

- Sentencing/appellate counsel were ineffective for failing to object to, or raise the issue of, the use of an illegal and unconstitutional conviction and sentence as a prior conviction under § 9714.  A544-49 (referring to the 1976 conviction).

- Sentencing/appellate counsel were ineffective for failing to challenge the trial court's use of impermissible factors at sentencing in imposing sentence.  A550-51 (referring to Judge Lieberman's comments as to Mr. Ruiz's travel to Berks County).

On June 2, 2015, the Superior Court issued a ruling that the withdrawal of Mr. Ruiz's PCRA counsel, Hoffert, was not proper.  A606-10.  The court based its ruling on its finding that at least one other issue identified in Mr. Ruiz's pro se petition was of arguable merit:  his contention that imposition of a life sentence violated his right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  A608-09.  For this reason, the Superior Court remanded to the trial court for the appointment of new counsel to further develop argument on the *Apprendi* issue and to "independently determine whether any other issues have arguable merit," at which point newly appointed counsel could "pursue any appropriate action before the PCRA court."  A609-10.

iv.   ***Appointment of New Counsel and Proceedings on Remand***

On remand, the trial court appointed new counsel, Osmer Deming, Esq. A612-13.  The trial court's order repeated the Superior Court's directive that Deming should address the *Apprendi* issue and "review the entire record and independently determine whether any other issues have arguable merit."  A612.  On September 25, 2015, Deming filed a motion and accompanying brief for a new jury trial.  A614-29. The filing addressed only the *Apprendi* issue identified by the Superior Court and stated that Deming had "reviewed the remaining issues and could find merit in none of them."  A629.  On November 4, 2015, the trial court denied the motion.  A635.

v.   ***PCRA Appellate Proceedings – Second Appeal***

Deming continued to represent Mr. Ruiz on appeal and filed in the Superior Court a brief that, once again, addressed just the single issue of whether Mr. Ruiz's life sentence violated his jury trial rights under *Apprendi*.  A637-70.  On August 26, 2016, the Superior Court ruled that there was no violation of Mr. Ruiz's jury trial rights and affirmed the denial of PCRA relief.  A687-91.  Mr. Ruiz filed a timely pro se petition for allowance of appeal in the Supreme Court of Pennsylvania, and that petition was denied on May 3, 2017.  A692.

G. *Federal Habeas*

Mr. Ruiz filed a pro se habeas petition in federal court on November 27, 2017.  A Magistrate Judge recommended that it be dismissed as untimely, to which Mr. Ruiz objected through his newly appointed counsel, Jonathan H. Feinberg, Esq.  After holding an evidentiary hearing, I sustained Mr. Ruiz's objections, finding he was entitled to equitable tolling.  *Ruiz v. McGinley*, No. 18-880, 2023 WL 2139822 (E.D. Pa. Feb. 21, 2023).  Shortly thereafter, Mr. Ruiz filed an amended habeas petition.  ECF 26 ("Am. Petition").  The Berks County District Attorney's Office filed a response, ECF 28 ("Resp."), to which Mr. Ruiz replied.  ECF 29 ("Reply").

Mr. Ruiz's amended habeas petition asserts four claims:

- **Claim 1**: Mr. Ruiz's trial and sentencing counsel, Kathleen Dautrich, Esq., provided ineffective assistance in failing to investigate and present mitigating evidence at Mr. Ruiz's sentencing.

- **Claim 2**: Mr. Ruiz's life sentence for non-homicide offenses involving no physical harm to any victim and less than $100 in loss is cruel and unusual in violation of the Eighth Amendment.[6]

- **Claim 3**: Mr. Ruiz's sentencing and appellate counsel were ineffective in failing to challenge the trial court's use of an unconstitutional conviction to enhance Mr. Ruiz's sentence.

- **Claim 4**: Mr. Ruiz's sentencing and appellate counsel were ineffective in failing to address the trial court's reliance on an impermissible factor – Mr. Ruiz's travel to Berks County – to enhance his sentence.

## II.    Legal Standards

### A. *Exhaustion*

"[A] federal court is allowed under 28 U.S.C. § 2254(b)(1)(A) to grant a state prisoner's habeas petition only if the petitioner has exhausted all available state remedies.  In order to satisfy the exhaustion requirement, a federal habeas claim must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  To be "fairly presented," the petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Id.* (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) (stating that "mere similarity of claims is insufficient to exhaust").  In addition, exhaustion requires a petitioner provide state courts "one full opportunity

---

[6] In the alternative, Ruiz asserts this claim as one of ineffective assistance – that prior counsel were ineffective for failing to litigate an Eighth Amendment challenge to the sentence.  Am. Petition at 41 n.22.

to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

    B.  *Ineffective Assistance of Counsel*

To determine whether a petitioner may prevail on a claim alleging ineffective assistance of counsel, courts follow the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient, such that their errors "fell below an objective standard of reasonableness" and were "so serious that counsel was not functioning as the 'counsel'" constitutionally guaranteed to criminal defendants. *Id.* at 687-88. Second, the petitioner must show that the deficient performance was prejudicial. *Id.* at 687. This requires showing that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To determine prejudice, the court must decide whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). On the other hand, counsel cannot be found ineffective for failing to raise a meritless argument. *See Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010) (citing *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998)).

    C.  *Merits Review of Federal Habeas Claims*

Under federal habeas law, review of a state court conviction is limited in nature and may only be granted if the state court's adjudication of a claim asserted in the habeas petition (1) "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Under the

'unreasonable application' clause, a federal habeas court may grant writ if the state court uses the proper legal principle from federal law but applies that principle to the facts of the case in a manner that is objectively unreasonable. *Williams v. Taylor*, 529 US. 362, 413 (2000). Clearly established federal law means "the holdings, as opposed to the dicta of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Thus, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

### III.   Discussion

#### A. *Exhaustion*

##### i. ***Ruiz exhausted claims one, three, and four.***

Mr. Ruiz presented claims one (mitigating evidence), three (reliance on an unconstitutional conviction for sentencing), and four (reliance on an impermissible factor for sentencing) as part of his PCRA motion of February 8, 2012.[7] A337, A302, A312. The PCRA court reached the merits of claims one and four, A517-18, held that claim three was waived, A515-16, and then dismissed all claims, A531. Mr. Ruiz appealed this dismissal to the Superior Court on two grounds. First, he argued the PCRA court erred in dismissing his PCRA motion without a hearing because he had "raised multiple issues of arguable merit concerning sentencing and appellate counsel," (i.e., claims one, three, and four). Second, he argued his PCRA counsel, Hoffert, was also ineffective for not properly reviewing the record before filing a *Finley* letter. A533-85.

---

[7] Whether Mr. Ruiz presented his claims with sufficient legal and factual background for the PCRA court to ascertain that he was raising a federal claim is not at issue here.

The Superior Court, however, did not reach the merits of claims one, three, and four. Instead, its June 2, 2015, opinion addressed only one issue, which Mr. Ruiz had not raised on appeal: whether the imposition of a life sentence violated the defendant's right to a jury trial under *Apprendi*. A607-08 (referring to the *Apprendi* issue as one of "arguable merit"). On this basis, the court remanded for the appointment of new counsel to brief the *Apprendi* claim and to "independently determine whether any other issues have arguable merit."[8] A610. On remand, Mr. Ruiz's newly appointed counsel, Deming, moved for a new trial solely on the basis of the *Apprendi* claim, A614-29, noting that "all other issues [Mr. Ruiz] has raised are not of arguable merit," A618. Consequently, claims one, three, and four did not reach the Superior Court again on appeal. A687-91.

Respondent now argues Mr. Ruiz did not fully exhaust his claims because the Superior Court on appeal never considered these claims on their merits.[9] Resp. at 11. Mr. Ruiz responds that he did exhaust because there is no case law imposing a duty to continue raising claims "up and down the appellate chain to exhaust even when the court has already made an affirmative decision not to address the claim[s] on the merits." Reply at 3.

The Third Circuit has held that "[i]t is 'too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon

---

[8] The Superior Court also focused on "Ruiz['s] assert[ion] that PCRA counsel was improperly allowed to withdraw before the PCRA court." A606. But nowhere in his appeal does Ruiz make this assertion. *See generally* A533-585. In fact, his appeal sought, among other things, appointment of *new* counsel, A561, again on the basis that the PCRA court improperly dismissed without a hearing and that his PCRA counsel had been ineffective.

[9] Respondent also argues these claims "were not litigated on their merits before the highest state court, as required to satisfy the exhaustion requirement." Resp. at 11. But the highest state court, the Pennsylvania Supreme Court, "is outside the appellate review process for purposes of habeas exhaustion." *Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 379 n.1 (3d Cir. 2022) (citing *Lambert v. Blackwell*, 387 F.3d 210, 232-34 (3d Cir. 2004)).

whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in [a] petitioner's brief in the state court.'" *Holloway v. Horn*, 355 F.3d 707, 718 (3d Cir. 2004) (citing *Smith v. Digmon*, 434 U.S. 332, 333 (1978)).  In *Holloway*, the habeas petitioner had presented his federal claim to the Pennsylvania Supreme Court through a pro se supplemental briefing on direct appeal.  *Id.* at 715.  The Pennsylvania Supreme Court's opinion, however, "made no mention of the pro se brief or the [federal] claim and issued no order or decision on whether it had accepted or rejected the pro se brief for consideration."  *Id.*  Still, the Third Circuit held that the petitioner had exhausted his claim because "he placed the state court on notice of the factual and legal substance of his federal equal protection argument and raised the claim through the established system for review."  *Id.*[10]

Here, I find Mr. Ruiz satisfied exhaustion as to claims one, three, and four, despite the Superior Court's failure to address his claims.  Even as a pro se litigant, the record before me shows Mr. Ruiz went to great lengths to place the Superior Court "on notice that a federal claim [was] being asserted," *Bronshtein*, 404 F.3d at 725, and to fully brief the issues.[11]

It was entirely the Superior Court's decision *not* to address Mr. Ruiz's federal claims and to remand instead based on issues not brought on appeal (including the *Apprendi* and improper

---

[10] In *Smith v. Digmon*, the lower federal court had refused to entertain a habeas petitioner's federal claim because the state court opinion made no reference to the claim.  434 U.S. at 332.  On this basis, the lower court concluded the petitioner must not have presented it to any state court.  *Id.*  The Supreme Court reversed the lower court's ruling, holding:

> It is equally obvious that a district court commits plain error in assuming that a habeas petitioner must have failed to raise in the state courts a meritorious claim that he is incarcerated in violation of the Constitution if the state appellate court's opinion contains no reference to the claim.

*Id.* at 333-34.

[11] In addition to challenges resulting from his pro se status, Mr. Ruiz has also faced the removal of legal aides while incarcerated, a language barrier, and a learning disability.  *See Ruiz*, 2023 WL 2139822 at *2-4.

removal of counsel issues).  Under Pennsylvania law, the PCRA court's dismissal constituted "a final order for purposes of appeal."  Pa. R. Crim. P. 910.  PCRA petitioners do not have an absolute right to an evidentiary hearing, including where the claims are "patently frivolous and [] without a trace of support in either the record or from other evidence."  *Commonwealth. v. Jordan*, 772 A.2d 1011, 1014 (Pa. Super. Ct. 2001) (citation omitted).  But PCRA petitioners may appeal such a denial.  *See id.*  And "[a] reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing."  *Id.*  (citation omitted).  Despite having the opportunity to do so, the Superior Court did not address *any* of the issues presented in Mr. Ruiz's appeal or his PCRA petition.

I find Mr. Ruiz satisfied the requirement of exhaustion by fairly presenting his claims one, three, and four, which gave both the PCRA court and the Superior Court the opportunity to resolve the underlying constitutional issues. He cannot be faulted for their failures to address the issues. To hold otherwise would erect unreasonable and unnecessary barriers to habeas review.  *See Rose v. Lundy*, 455 U.S. 509, 520 (1982) (noting the purpose of exhaustion is not to "trap the unwary pro se [litigants]," but rather to provide a "simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court"); *Picard*, 404 U.S. at 275 (describing the exhaustion-of-state-remedies doctrine as "designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights'") (citation omitted).

    ii.    **Ruiz failed to exhaust claim two, but his subsidiary claim of ineffective assistance is excused from procedural default.**

On direct appeal, Mr. Ruiz filed a Pa. R.A.P. 1925(b) concise statement of issues delineating, among other issues, that the trial court abused its discretion in sentencing him to life

imprisonment.[12]   A222; A209-10.   The trial court proceeded to file an opinion concluding that Ruiz's claims of error had no merit.   Ruiz then filed a brief in the Superior Court, arguing the same issues outlined in the concise statement, but adding a contention that his "sentences amount[ed] to cruel and unusual punishment given the facts of each case" (i.e., claim two).   A204.   The Superior Court acknowledged Mr. Ruiz's Eighth Amendment claim, A263, but did not otherwise address it.   *See* A253-69.

The Berks County DA's Office concedes that Ruiz briefed an Eighth Amendment claim on direct appeal but argues that he waived it nonetheless because he did not raise it in his Pa. R.A.P. 1925(b) statement.   Resp. at 20 n.7.   I agree, because that omission failed to provide the trial court "one full opportunity to resolve any constitutional issues," *O'Sullivan*, 526 U.S. at 845; *cf. Rolan v. Coleman*, 680 F.3d 311, 318 (3d Cir. 2012) (finding that a petitioner had complied with 1925(b), contrary to the state court's finding of waiver, because his 1925(b) statement "allow[ed] the [trial] court to identify his claims").   As such, I find that Mr. Ruiz failed to exhaust claim two.

Alternatively, Mr. Ruiz contends he exhausted a subsidiary claim that prior counsel were ineffective for failing to litigate an Eighth Amendment challenge to his sentence.   Am. Petition at 41 n.22.   As with claims one, three, and four, Mr. Ruiz briefed this subsidiary claim as part of his pro se PCRA petition.   A314-29.   But, unlike those claims, he did not raise claim two as part of his appeal to the Superior Court.   *See* A533-62.   As such, he also did not exhaust this formulation of the claim.

---

[12] Under Pennsylvania law, "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925.  Any issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

Despite failing to exhaust, Mr. Ruiz overcomes the resulting procedural default pursuant to *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).  Habeas petitioners may overcome procedural default under *Martinez* when:  (1) the defaulted ineffective assistance claims are "substantial" and (2) post-conviction counsel's performance fell below an objective standard of reasonableness.  *See Workman v. Superintendent Albion SCI*, 915 F.3d 928, 941 (3d Cir. 2019).  As to the first prong, for a claim to be substantial, it must have some merit in that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Id.* at 940-41 (citation omitted) (differentiating this from *Strickland*'s standard applied on the merits).

Based on this standard, I find Mr. Ruiz has proved his subsidiary claim had some merit, such that prior counsel should have continued to litigate it further.  As to the second prong, post-conviction counsel have an obligation to preserve claims of merit, *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 243-44 (3d Cir. 2017).  Thus, when Mr. Ruiz's counsel, Deming, decided to no longer pursue claim two, despite having an extensive record of its merits, his conduct fell below an objective standard of reasonableness.[13]  As such, I find that Mr. Ruiz' subsidiary claim two is excused from procedural default and I hereinafter refer to this claim simply as "claim two."

B. *Merits Review of Federal Habeas Claims*

A discussion as to the merits of the claims ensues.  For the merits analysis, I look to the PCRA court's notice of intent to dismiss, A510-24, as the "last reasoned decision."  *Simmons v.*

---

[13] The same is true as to claims one and three, if I were to find that Ruiz failed to exhaust these.  Both claims one and three are substantial in that "reasonable jurists could debate" that the issues "deserve[d] encouragement to proceed further."  *Workman*, 915 F.3d at 941.  In addition, given his exposure to a possible life sentence, Mr. Ruiz's post-conviction counsel's performance (including counsel Deming's) fell below an objective standard of reasonableness in dropping these claims.

*Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)).

> i.   ***The PCRA court unreasonably determined that Ruiz was not prejudiced by his counsel's failure to present any mitigating evidence for sentencing.***

In his first claim, Mr. Ruiz argues that his trial counsel, Kathleen D. Dautrich, Esq., was ineffective for failing to investigate or present any mitigating evidence at his sentencing, and for failing to argue mitigation.  Am. Petition at 30-39.  According to Mr. Ruiz, the PCRA court's ruling, that he was not prejudiced by Dautrich's failure, was an unreasonable application of clearly established federal law.  *Id.*  The Berks County DA's Office argues in response that "trial counsel can only act upon information if it is known to her, and Ruiz had a responsibility to relay possibly mitigating evidence to his trial counsel."[14]  Resp. at 15.  I find that the PCRA court unreasonably applied Supreme Court precedent, including *Strickland*'s ineffective assistance standard, and on this basis grant habeas relief.[15]

---

[14] Respondent provides no other argument to justify Dautrich's performance.  *See* Resp. at 14-16. Respondent's only point is that Mr. Ruiz should have presented the mitigation evidence as part of a presentencing investigation report and during allocution at his sentencing.  A517.  But the referenced presentencing investigation report is neither part of the record before me nor available to the parties at this stage of the litigation.  Am. Petition, at 9 n. 9.  Any assumptions on what information was (or was not) elicited from Mr. Ruiz in preparation of that report would be just that, assumptions, which not even the PCRA court alluded to, despite relying on the report for other purposes, *see* A218.

[15] Although the PCRA court's notice of intent to dismiss cites to Pennsylvania case law, A514-18, it was clearly attempting to apply the *Strickland* standard for ineffective assistance.  For example, the PCRA court cited *Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa. Super. Ct. 2005) for the standard of ineffective assistance.  A514-15.  In *Morrison*, a Pennsylvania appellate court asserts the "constitutional ineffectiveness standard" requires that a defendant:

> [R]ebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

First, the PCRA court unreasonably applied clearly established ineffective assistance precedent because no reasonable jurist could agree that Dautrich's failure to inquire about mitigating evidence, and failure to raise any argument against the imposition of a life sentence, constituted reasonable performance.

To find that a state court's application of *Strickland* was unreasonable under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. When dealing with counsel's decision not to investigate, courts must directly assess "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. A defendant's "own statements or actions" may determine or substantially influence whether counsel's actions were reasonable. *Id.* Still, the Supreme Court instructs lower courts to "determine whether, *in light of all the circumstances*, the identified acts or omissions were outside the wide range of professionally competent assistance."[16] *Id.* at 690 (emphasis added).

---

878 A.2d at 105 (citations omitted); *see also* A515 (citing this language verbatim). The second and third prongs in *Morrison* correspond to *Strickland*'s reasonable performance and prejudice prongs. *See Strickland*, 466 U.S. at 690-94.

[16] The Supreme Court in *Strickland* applied these general principles to the facts at issue "in order to illustrate [their] meaning." *Id.* at 698-700. There, the defendant sought to have his conviction or death sentence set aside based on his counsel's assistance at sentencing. *Id.* at 671. According to the defendant, his counsel was ineffective when he "failed to move for a continuance to prepare for sentencing, to request a psychiatric report, to investigate and present character witnesses, to seek a presentence investigation report, to present meaningful arguments to the sentencing judge, and to investigate the medical examiner's reports or cross-examine the medical experts." *Id.* at 675.

In support of his claim, the defendant submitted affidavits of several people who would have testified if asked to do so, as well as reports stating he was "'chronically frustrated and depressed because of his economic dilemma' at the time of his crimes." *Id.* at 675-76. Still, the Supreme Court held that his counsel's decision not to seek "more character or psychological evidence than was already in hand was likely reasonable." *Id.* at 699. The Court found particularly relevant that: the defendant had "utterly overwhelming" aggravating circumstances; he had already mentioned his financial and emotional troubles at the plea colloquy; and, restricting further character testimony ensured "contrary character and

As such, despite the high level of deference owed, it can hardly be absolute.  In *Strickland* the Supreme Court described that balance as follows:

> [S]trategic choices made *after* thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made *after* less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, *counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary*.

466 U.S. at 690-91 (emphasis added).  Necessarily, *some* form of investigation is needed before counsel's actions can be deemed "strategic."  *See id.*  In the context of mitigation, at the very least, some form of inquiry into the defendant's background is necessary, even where counsel's strategy is to *not* pursue a complete investigation.  *See id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) ("In light of these standards, our principal concern in deciding whether [counsel] exercised 'reasonable professional judgment' is not whether counsel should have presented a mitigation case.  Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background *was itself reasonable*.") (cleaned up).

The Supreme Court has also long recognized prevailing norms of practice, such as the American Bar Association (ABA) Standards for Criminal Justice as "guides to determining what is reasonable."  *Strickland*, 466 U.S. at 688-89 (citing ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980)).  In *Wiggins* and in *Williams*, both capital cases involving ineffective assistance of counsel, the Supreme Court cited ABA Standard for Criminal Justice 4-4.1 and its accompanying commentary.  539 U.S. at 524-25; 529 U.S. at 396.  That standard states, in part:

**Standard 4-4.1. Duty to investigate**

---

psychological evidence and . . . criminal history, which counsel had successfully moved to exclude, would not come in."  *Id.*

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.  The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities.  The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

. . .

***Commentary***

. . .

The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing.  This cannot effectively be done on the basis of broad general emotional appeals or on the strength of statements made to the lawyer by the defendant.  Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself.  Investigation is essential to fulfillment of these functions.  Such information may lead the prosecutor to defer or abandon prosecution and will be relevant at trial and at sentencing.

Effective investigation by the lawyer has an important bearing on competent representation . . . . The effectiveness of advocacy is not to be measured solely by what the lawyer does at the trial; without careful preparation, the lawyer cannot fulfill the advocate's role.  Failure to make adequate pretrial investigation and preparation may be grounds for finding ineffective assistance of counsel.

ABA Standard for Criminal Justice 4-4.1 (2d ed. 1980).

The Supreme Court has also made clear that, separate from what the client may think, trial counsel has an obligation to make reasonable efforts to investigate, develop, and present mitigating evidence for purposes of diminishing culpability at sentencing.  In *Rompilla v. Beard*, it held that "even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial."  545 U.S. 374, 377 (2005).  In *Williams*, the Court held that omitting certain mitigating evidence regarding the defendant's mental state and behavior

24

clearly demonstrated "that trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background," even though not all the evidence was favorable. 529 U.S. at 396. And in *Wiggins,* the Court made clear that "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." 539 U.S. at 527.[17]

Here, the PCRA court's analysis of reasonable performance does not meet the requirements of *Strickland.* For one, the PCRA court made no mention whatsoever of Dautrich's performance as it relates to mitigating evidence. Instead, the PCRA court shifted the entire burden to Mr. Ruiz and his perceived inability to bring mitigation evidence to Dautrich or the trial court's attention:

> [Mr. Ruiz] does not in any way establish, however, that counsel was aware of [the mitigating] facts or that witnesses were willing to cooperate and appear on his behalf at sentencing. Moreover, the record reflects that [Mr. Ruiz], when given a chance to speak prior to the imposition of a sentence, chose to say nothing.

A518.[18] This ignores Mr. Ruiz's assertions that Dautrich never elicited such information from him in the first place:

> Attorney Dautrich, [Mr. Ruiz's] sentencing counsel, did not offer or argue any meaningful evidence of mitigation at [Mr. Ruiz's] sentencing hearing. She seems to have entered the hearing believing that [Mr. Ruiz's] fate was already sealed and that, therefore, there was no need to do much by way of investigation into [Mr.

---

[17] Although *Rompilla*, *Williams*, and *Wiggins* involved capital defendants, their holdings are clearly established law and certainly relevant to the PCRA court's determination of counsel's performance under *Strickland*, itself a capital case. Moreover, the Supreme Court has noted the severity of a sentence of life without parole, stating that "[o]nly capital punishment . . . exceeds it." *Solem v. Helm*, 463 U.S. 277, 297 (1983). And the ABA standards cited in *Strickland*, *Williams*, and *Wiggins* are not limited to capital cases.

[18] As a preface to this analysis, the PCRA court referenced a standard for "failure to interview and/or present a witness." A518 (citing *Commonwealth v. Hall*, 701 A.2d 190, 201 (Pa. 1997)). The PCRA court's reliance on *Hall* does not preclude this Court from reviewing its application of *Strickland*, which it was clearly attempting to apply, *see supra* note 15. In fact, *Hall* was subject to later habeas review by a member of this Court, resulting in relief due to "trial defense counsel's inadequate investigation and presentation of mitigating evidence at the penalty phase." *Hall v. Beard*, 55 F. Supp. 3d 618, 669 (E.D. Pa. 2014) (Gardner, J.). If anything, therefore, the PCRA court's sole reliance on *Hall* here highlights its failure to address the duties the Supreme Court has long recognized defense counsel have at sentencing.

Ruiz's] background in order to prepare for the hearing. **Counsel, as discussed at length above, never explained to Mr. Ruiz about mitigating evidence, the importance of mitigating evidence at a sentencing hearing such as he was facing, or the types of mitigating evidence that could be offered. Not only that, counsel never interviewed Mr. Ruiz about his background to discover relevant mitigating evidence to present.**

A342 (citing to Mr. Ruiz's verified statement, attached to his PCRA petition) (emphasis added).

Under *Rompilla,* counsel's duty to investigate is independent of the client's beliefs. For practical purposes, the rationale employed by the PCRA court would in effect leave Mr. Ruiz to proceed pro se when facing serious criminal charges that give rise to a right to counsel. And underpinning the right to counsel is the expectation that counsel will be learned in the law and capable of advocacy.

Moreover, under *Wiggins,* counsel's performance at the sentencing hearing is important in the evaluation of whether a failure to present evidence and argument on mitigation "stemmed from inattention" rather than the exercise of "strategic judgment." 539 U.S. at 512. Here, counsel revealed on the record that she was oblivious to an amendment to the controlling Pennsylvania statute, 42 Pa. C.S. § 9714(a)(2). Her comments reflected that she was also unaware that her client could face life imprisonment, and erroneously expected some additional hearing before he could be sentenced as a repeat offender. Even her choice of words in response to the Court implies some unwarranted expectation that there would be a future opportunity to be heard: "We have no evidence to present *at this time.*" A66 at 19:17-19 (emphasis added.) The PCRA court did no analysis of counsel's utter capitulation at sentencing, where, even putting aside mitigation evidence, she did not raise a single argument against a life sentence. For that matter, she offered no rebuttal when the prosecutor described the burglaries as "home invasions," when the record reflects that Ruiz did not break in to confront victims but followed a strategy of ringing the doorbell

for several minutes before seeking entry through a window, seemingly trying to ensure no one was home.[19]  Supp. App. 2 at 7-8; Supp. App. 18 at 71-72.

The PCRA court did recognize some of the mitigating evidence Mr. Ruiz would have sought to introduce: "In the instant case, [Mr. Ruiz] claims that counsel should have presented evidence that he was suffering from mental illness, that he had a low IQ, that he was addicted to drugs, and that he was physically and sexually abused as a child."  A518.  But as discussed more fully below, mere recitation of potentially relevant evidence is not the same as consideration of its significance, and the balancing that *Strickland* requires.  Moreover, even this summary overlooks important context Mr. Ruiz set forth in his PCRA petition as relevant and available mitigation evidence, including that:  his addiction began at the age of 12; he had contracted HIV as a result of sharing needles; his criminal history was directly linked to his addiction; and he was attempting to control his addiction and regain his life, but had issues accessing counseling treatment, even while incarcerated.  A397-400.  Regardless, the PCRA court placed the burden entirely on Mr. Ruiz, without addressing his counsel's omissions, A518, because nothing in the record supports any investigation by counsel.  The fact that Ms. Dautrich "did not even perform an investigation sufficient to provide the foundation for a reasoned strategic choice as to which avenues of potentially mitigating evidence to pursue," supports a conclusion that her actions were "not the result of any . . . reasoned judgment, but . . . merely the consequence of lackluster performance."

---

[19] Mr. Ruiz struggled with the homeowner in the Reading burglary, Mr. Lopez, as he was trying to detain him, but the record reflects that Ruiz was attempting to flee throughout the struggle.  Supp. App. 23 at 90 ("He was trying to leave, so we were forcing and pushing each other because he wanted to leave."); *Id.* at 91:16-21 ("I was trying to hang on to him because he was going down [the stairs] first. . . . Because I wanted the police, because my daughter was calling them, to catch him when they came in, so I kept holding him."). And although Mr. Ruiz was found guilty of simple assault in connection with this offense, there is no evidence on the record of physical harm to Mr. Lopez or his family, *see* Supp. App. 17-26, and the Commonwealth withdrew that count at the time of sentencing, *see supra* note 5.

*Blystone v. Horn,* 664 F.3d 397, 423 (3d Cir. 2011) (citing *United States v. Gray*, 664 F.3d 397, 423 (3d Cir. 2011)).

In some instances, counsel need not affirmatively introduce mitigating evidence at sentencing if it is already in the record, *Strickland*, 466 U.S. at 699, but that is not the case here. For strategic purposes, counsel may also properly choose not to present mitigating evidence if there is a potential that introducing such evidence would have invited harmful character testimony or criminal history. *See Strickland*, 466 U.S. at 676-77. But given the nature of the evidence here, there is no readily identifiable risk of such rebuttal, and counsel's conduct during the sentencing hearing reflects a lack of understanding of the governing law and unpreparedness, not strategic judgment. As noted above, apart from mitigation evidence, the failure to raise any argument whatsoever in response to the prosecution's request for life strongly supports the conclusion that counsel's conduct "thoroughly resulted from inattention," *Wiggins*, 539 U.S. at 526, and represents a "breakdown of the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696. For all practical purposes, Ruiz was unrepresented by counsel at sentencing. And no reasonable jurist could find his counsel's inaction was reasonable.

Second, the PCRA court unreasonably applied clearly established ineffective assistance precedent because no reasonable jurist could agree Dautrich's performance did not prejudice Mr. Ruiz.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court's assessment of prejudice "should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that

govern the decision.  It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Id.* at 695.  The Third Circuit has interpreted this aspect of *Strickland* to require a habeas court to consider not the "subjective" effect of the evidence on the presiding judge, or proclivities of the sentencing judge, but rather, "more abstractly, the effect the same evidence would have had on an unspecified, objective factfinder." *Saranchak v. Beard*, 616 F.3d 292, 309 (3d Cir. 2010).

As with the reasonable performance determination, a court making a determination of prejudice "must consider the totality of the evidence before the judge."  *Strickland*, 466 U.S. at 695.  A conclusion "weakly supported by the record is more likely to have been affected by [counsel's unreasonable performance] than one with overwhelming record support."  *Id.* at 696. Thus, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.*

Here, again, the PCRA court's analysis of prejudice fails to abide by the *Strickland* standard.  The PCRA court held Mr. Ruiz was unable to establish prejudice by restating the prior basis for its decision:

> In addition, the record reflects that this court reviewed a pre-sentence investigation report prior to imposing a life sentence.  That report indicated that in addition to the burglary convictions which were certified for the purpose of the Three Strikes Law, the Defendant had committed approximately six other burglaries, dating back to a conviction in Lancaster County in 1975.  Nearly thirty years later, [Mr. Ruiz] was still burglarizing homes.  In fact, he was on parole due to burglary convictions at the time he committed the instant offenses.  Given this criminal history, it was clear that [Mr. Ruiz] was not amenable to treatment.  As a result, he is also unable to establish prejudice.

A518 (internal citations omitted).

The PCRA court focused solely on Mr. Ruiz's criminal history.  It cited some aspects of the mitigating evidence that would have been available but did so in a truncated fashion.  In his PCRA petition, Ruiz asserted the following: his heroin and cocaine addiction began at the age of 12; withdrawal had led him to become physically ill, mentally depressed, and to suffer suicidal thoughts; and his addiction had also caused him to contract HIV from sharing needles.  A397-400.  Moreover, as Ruiz explained it, his criminal history was directly linked to his drug addiction:

> As I began requiring increasing quantities of heroin and cocaine on a regular basis, getting the money to pay for the substances became a real problem.  I was faced with the choice between committing a burglary or theft to get money to buy drugs or suffer the gut-wrenching nausea of withdrawing "cold turkey."  While under the influence of the heroin and cocaine, I was also paranoid and distrustful of people, and I didn't know who I could trust or where I could go for help.  And I was honestly so caught up in the daily struggle just to keep my physical craving for the drugs under control that I didn't have much time or the clarity of mind to give much thought to anything except where I was going to get my next fix and how to pay for it.  Under the circumstances, committing a burglary or theft at the time seemed like the lesser of two evils.

A398.  Mr. Ruiz also directly addressed his amenability to treatment: "I believe that, with proper therapy, which I have yet to receive, I can finally overcome my addiction and go on to live a law-abiding life."  A400.

The mitigation evidence Mr. Ruiz sought to introduce would certainly have been relevant to a conscientious and fair-minded judge and did not rely on testimony from unspecified witnesses.  By simply reiterating what had been said at sentencing, the PCRA court did not step back to engage in an objective process of evaluating whether, "reasonably, conscientiously, and impartially," "the balance of aggravating and mitigating circumstances" warranted life without parole.  *Strickland*, 466 U.S. at 695.  Such evidence, the Third Circuit has recognized, "is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable . . . to emotional and mental problems, may be less culpable than defendants who have no such

excuse." *Blystone,* 664 F.3d at 427, (quoting *Penry v. Lynaugh,* 492 U.S. 302, 319 (1989)).  By failing explicitly to weigh the potential impact of such mitigation against a life sentence, the PCRA court violated the *Strickland* prejudice standard.

As to whether there is a reasonable probability that counsel's failure affected the outcome, I conclude that the complete failure to offer neither evidence nor argument is more than sufficient "to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  A sentence of life without parole is astonishingly harsh for an offender who had only committed property crimes and minor assaults causing no injury, the most recent of which were ineptly executed while suffering from addiction and caused only minimal property loss.  The sentence is particularly hard to rationalize when the statute in question explicitly provided an enhanced sentence of 25 years to address chronically recidivist offenders,[20] a stiff deterrent in its own right.  Given the nature of the offenses and the wealth of mitigating evidence, I am persuaded that a reasonable and impartial judge would not have imposed life without parole.[21]  And the PCRA court's failure to address how the complete lack of any argument in support of mitigation – and how the type of testimony Mr. Ruiz himself could have given – would have affected the sentence, is an unreasonable application of *Strickland.*

In summary, I conclude that the PCRA court's prejudice determination was also an unreasonable application of federal law, and that Mr. Ruiz has met the standard for prejudice.[22]

---

[20] At sentencing, the judge referenced a pre-sentence investigation report which showed six burglary convictions, three of which were proved by certified records.  A66 at 20:11-16.  That report is not available for review, and it is not clear whether the two most recent offenses were part of that total number.

[21] It is not the role of a habeas court to critique the specific performance of the sentencing judge.  But given the controlling standard, here – how a reasonable and impartial judge would balance mitigating and aggravating factors relevant to sentencing – the sentencing judge's reference to offering a prayer of thanks for the fortitude of the prosecutor and further reference to Mr. Ruiz's "mistake in coming to Berks County," A67 at 21, stand out as concerning.

[22] The Court in *Strickland* also cautioned that courts should "strive to ensure that ineffectiveness claims [do] not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."

ii.   ***The PCRA court did not unreasonably apply federal law as to Ruiz's second claim.***

In his second claim, Mr. Ruiz argues his prior counsel were ineffective for failing to litigate an Eighth Amendment challenge to his sentence. Am. Petition at 41 n. 22. According to Mr. Ruiz, his sentence is unique and extreme and warrants reversal as "cruel and unusual" because there was no proof of any physical harm by his conduct and the property harm was minimal. *Id.* at 39-41 (citing *Solem*, 463 U.S. at 279). Moreover, he argues that the PCRA court provided "legally erroneous reasoning" when it cited to *Commonwealth v. Parker*, 718 A.2d 1266, 1266-67 (Pa. Super. Ct. 1988) because that case involved a constitutional challenge to a twenty-five to fifty-year sentence under the three-strikes law, rather than a challenge to a life sentence.

The PCRA court addressed claim two as follows:

> The [claims] raised by the Defendant all involve claims that trial and appellate counsel were ineffective for failing to challenge the application of 42 Pa. C.S.A. § 9714 [Pennsylvania's three strikes law] on constitutional grounds. Specifically, the Defendant contends that the statute is unconstitutionally vague and therefore void. He also asserts that the statute violates the Eighth Amendment to the United States Constitution. As PCRA counsel noted in her *Finley* Petition, the Defendant was sentenced pursuant to 42 Pa. C.S.A. § 9714(a)(2), which the Supreme court of Pennsylvania held was constitutional. *Commonwealth v. Belak*, 573 Pa. 414, 825 A.2d 1252 (Pa. 2003). Moreover, the Pennsylvania Supreme Court held that sentences imposed pursuant to the statute do not violate the Eighth Amendment. *Commonwealth v. Parker*, 718 A.2d 1266 (Pa. Super. 1998). As previously discussed, counsel cannot be deemed ineffective for failing to raise meritless claims. *Commonwealth v. Michaud*, 70 A.3d 862, 867 (Pa. Super. 2013). Therefore, these claims must also fail.

A516-17.[23] Through this analysis, the PCRA court presumably found that Mr. Ruiz's counsel performed reasonably in dropping the claim because it lacked merit.

---

466 U.S. at 697. I see no such risk in holding that defense counsel cannot simply surrender at sentencing when a client faces life without parole.

[23] Here again, the PCRA court cited to state case law, but was clearly attempting to apply federal ineffective assistance law. *See supra* note 15.

The PCRA court's reliance on *Commonwealth v. Parker* was misplaced.  For one, in solely relying on *Parker*, the PCRA court failed to acknowledge the gravity of Mr. Ruiz's sentence – life without the possibility of parole – which the Supreme Court has distinguished from life sentences *with* the possibility of parole.  *See Solem*, 463 U.S. at 297 (noting that life without parole is exceeded only by a sentence of death).  But *Solem* is offset by other decisions from the Supreme Court affirming life without parole for comparatively minor offenses.  *See Harmelin v. Michigan*, 501 U.S. 957 (1991) (upholding a life sentence without parole for a first-time offense of possessing 672 grams of cocaine); *see also Rummel v. Estelle*, 445 U.S. 263 (1980) (upholding a life sentence *with* the possibility of parole for obtaining $120.75 by false pretenses and two prior nonviolent felonies).  Given these decisions and some Pennsylvania case law affirming life sentences under the state's three-strikes law, it is possible at least some reasonable jurists could conclude that Mr. Ruiz's counsel had no obligation to press this ground for relief.  As such, I cannot conclude that the PCRA court unreasonably applied federal law.  *Williams*, 529 U.S. at 365.

### iii. *The PCRA court did not unreasonably apply federal law as to Ruiz's third claim.*

In his third claim, Mr. Ruiz argues his prior counsel were ineffective for failing to challenge the use of an unlawful conviction to enhance his sentence.  Am. Petition at 41.  According to Ruiz, at least one of his convictions – the 1976 conviction – was unconstitutional because it was obtained while he was deprived of counsel.  *Id.* (citing *Burgett v. Texas*, 389 U.S. 109, 114-15 (1967)).  He asserts that Dautrich knew the court could enhance his sentence based on his prior convictions, but she nonetheless failed to ask him about them.  *Id.* at 42.  And at sentencing, the trial did rely, in part, on the 1976 conviction to impose two life sentences.[24]  *See* A63-64 (admitting three

---

[24] As Respondent correctly points out, "the Commonwealth was only required to prove the existence of two prior crimes of violence to satisfy this 'third str[i]ke' mandatory provision."  Resp. at 18; *see* 42 Pa. C.S. § 9714(a)(2) ("Upon conviction for a third or subsequent crime of violence the court may, if it determines

convictions as certified, including the 1976 conviction); A66 at 20 (referring to the certified convictions).

On direct appeal, the Superior Court did not reach the merits of this claim.  Instead, it dismissed all of Mr. Ruiz's claims of ineffective assistance without prejudice to raise them through a PCRA petition.  A268-69.  As to the use of his prior convictions at sentencing, the Superior Court merely held that the "Commonwealth met its burden" of proving their validity for purposes of Pennsylvania's three strike law, 42 Pa. C.S. § 9714(a)(2).  A268.

When Mr. Ruiz raised this claim again through his PCRA petition, the PCRA court dismissed it as having been previously litigated on direct appeal and thus waived.[25]  A515-16.  Although the PCRA court failed to analyze whether the claim was considered on its merits on direct appeal, this oversight is not an unreasonable application of federal law.  And in any event Ruiz would not have been prejudiced as two prior convictions sufficed under state law.

iv. ***The PCRA court did not unreasonably apply federal law as to Ruiz's fourth claim.***

In his fourth claim, Mr. Ruiz argues his prior counsel were ineffective for failing to challenge the trial court's reliance of an impermissible factor at sentencing.  Am. Petition at 44.  According to Ruiz, the PCRA court "was substantially motivated in imposing a life sentence by the fact that Mr. Ruiz, who had multiple convictions in Lancaster County, had decided to come to Berks County."  *Id.*  He points to two comments his sentencing judge, Judge Lieberman, made as proof of such motivation.  At sentencing, Judge Lieberman said, "You made a big mistake coming

---

that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.").

[25] PCRA petitioners cannot seek relief for claims that have been previously litigated or waived.  42 Pa. Stat. and Cons. Stat. Ann. § 9543.  A claim is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue."  42 Pa. C.S. § 9544.

to Berks County and committing a crime here, and that will be reflected in the sentence."  A67 at

21:12-13.  In an opinion requesting that Mr. Ruiz's appeal be denied, he then wrote: "His crime

spree needed to end, and it ended in Berks County."  A216.  It is Mr. Ruiz's position that this

resulted in punishment for exercising a fundamental constitutional right to intrastate travel.  Am.

Petition at 45.  The Commonwealth responds that the sentencing judge was well within his

discretion in imposing a life sentence under Pennsylvania law, and the punishment was not "for

simply traveling to Berks County, but for committing crimes while in Berks County," which is not

constitutionally protected.  Resp. at 18-20.

Petitioner's contention that this language on the part of the sentencing judge, even if it is

viewed as intemperate, hardly supports the conclusion that the sentence was imposed as

punishment for travel.  Given the weakness of the argument, counsel cannot be deemed ineffective

for failing to preserve this claim.  As such, the state court did not unreasonably apply federal law.

## IV.   Conclusion

For the reasons set forth above, Mr. Ruiz's habeas relief will be granted as to claim one:

that Mr. Ruiz's sentencing counsel provided ineffective assistance in failing to investigate and

present mitigating evidence at his sentencing.  An appropriate order follows.


  /s/ Gerald Austin McHugh
United States District Judge